JUSTICE RICE
delivered the Opinion of the Court.
¶1 Brian F. Schoof (Schoof) appeals from the orders of the Sixteenth Judicial District Court dismissing claims made in his Third Amended Complaint against the named public officials (Defendants/Appellees). We reverse and remand for further proceedings, addressing the following issues:
¶2 1. Does Schoof have standing to pursue his right to know and right of participation claims?
¶3 2. Did the District Court err in dismissing Schoof s right to know and right of participation claims as time barred under § 2-3-213, MCA?
¶4 3. If the Commissioners’ “cash in lieu” policy is determined to be void, does mandamus lie to compel recovery of illegal payments under § 7-4-2714, MCA?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Schoof, a resident of Custer County, brought this action to challenge a decision by the Custer County Commissioners[1] (the Commissioners) to permit elected county officials to receive cash payments in lieu of county contributions on their behalf to a group health insurance program. Schoof alleges that the Commissioners unlawfully adopted the “cash in lieu” policy during an unannounced meeting held on July 26, 2007. He further alleges that “[n]either the meeting notice, nor the minutes of the proceeding provide sufficient notice of the change in policy such that the public would have any reasonable basis to understand the substance of the policy that was to *228 be considered or had been adopted.” According to Schoof, neither he nor the public was advised of the decision until Deputy County Attorney Joni Oja revealed it during a public meeting on August 17, 2011, over four years later. On September 16, 2011, Schoof filed this action to invalidate the Commissioners’ decision and compel the Custer County Attorney to recover the cash payments as illegally made.
¶6 Schoofs Third Amended Complaint sets out four counts: (1) violation of § 2-3-203, MCA, (Montana’s open meetings statute) and Article II, Section 9 of the Montana Constitution (right to know); (2) violation of § 2-2-102, MCA,[2] and Article II, Section 8 of the Montana Constitution (right of participation); (3) request for declaration that the “cash in lieu” policy is unlawful; and (4) request for mandamus to issue compelling the Custer County Attorney to commence an action to recover any illegal payments.
¶7 Pursuant to Appellees’ M. R. Civ. P. 12(b)(6) motion, the District Court dismissed Schoofs right to know and right of participation claims as time barred under the 30-day statute of limitations set forth in § 2-3-213, MCA. The District Court rejected Schoofs argument that the discovery rule provided in § 27-2-102(3), MCA, tolled the 30-day limitations period until Schoof discovered or should have discovered the facts underlying his claims, concluding that the statute did not apply in this case.
¶8 The District Court issued a second order dismissing Schoofs declaratory and mandamus claims on December 17, 2012. As to Schoof s claim for declaratory relief, the District Court determined that Schoof lacked standing because he had not alleged facts showing that he had suffered an injury distinct from the general public, and instead his injuries were coequal with all citizens and taxpayers. On the mandamus claim, the District Court noted that only ministerial acts, not discretionary, are subject to the writ, and reasoned that because Rule 3.1(a)(1) of the Rules of Professional Conduct requires a county attorney to exercise discretion in determining whether an action is meritorious, mandamus did not apply.
¶9 Schoof appeals, challenging the dismissal of his right to know, right of participation, and mandamus claims.
*229 STANDARD OF REVIEW
¶10 We review de novo a district court’s ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). Ming Da Situ v. Smole, 2013 MT 33, ¶ 11, 369 Mont. 1, 303 P.3d 747. “The determination of whether a complaint states a claim is a conclusion of law, and the district court’s conclusions of law are reviewed for correctness.” Ming Da Situ, ¶ 11. We accept the complaint’s factual allegations as true and consider the complaint in the “light most favorable” to the plaintiff. Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC, 2010 MT 63, ¶ 15, 355 Mont. 387, 228 P.3d 1134. “We will affirm a district court’s dismissal of a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.” Pederson v. Rocky Mt. Bank, 2012 MT 48, ¶ 8, 364 Mont. 258, 272 P.3d 663.
DISCUSSION
¶11 I. Does Schoof have standing to pursue his right to know and right of participation claims?
¶ 12 Standing is a threshold requirement that must be decided in every case. Baxter Homeowners Assn. v. Angel, 2013 MT 83, ¶ 14, 369 Mont. 398, 298 P.3d 1145. Questions of standing must be addressed sua sponte even if not raised by a litigant. Angel, ¶ 14. The parties did not raise the issue of standing on appeal. Accordingly, this Court determined sua sponte to order supplemental briefing on whether Schoof has standing to assert his right to know and right of participation claims. The parties’ supplemental arguments primarily boil down to a dispute over the application of this Court’s holding in Fleenor v. Darby Sch. Dist., 2006 MT 31, 331 Mont. 124, 128 P.3d 1048.
¶13 Appellees argue that “there is nothing in Mr. Schoof s Complaint which would take it out of the clear holding in Fleenor.” We concluded in Fleenor that the plaintiff (Fleenor) lacked standing to pursue her right to know and right of participation claims because she failed to allege a sufficient personal stake in, or injury from, the decision of the Darby School District Trustees to hire a new Superintendent. Fleenor, ¶¶ 9-12. Appellees contend that Schoof has similarly failed to allege “any personal interest [in] or injury [from]” the challenged action of the Commissioners “beyond the common interest or injury of all citizens or taxpayers.”
¶14 Schoof argues that he has shown “a particularized interest” in the Commissioners’ actions because he has been closely following the fiscal decisions of the County for several years. He asserts that to deny *230 standing in this case would “strike a blow to the enforceability of the rights to observe and participate.” Schoof “respectfully submit[s]” that Fleenor should be reexamined-at least insofar as it required Fleenor “to distinguish herself from the general citizenry and other taxpayers.” See Fleenor, ¶ 10. Schoof argues that “requiring Ms. Fleenor to show an injury different from the general public as an incident of standing will, in many open government cases like the instant one, shield a governmental entity from liability.”
¶15 There are two elements to standing: the case-or-controversy requirement imposed by the Montana Constitution, and judicially created prudential limitations imposed for reasons of policy. Heffernan v. Missoula City Council, 2011 MT 91, ¶ 31, 360 Mont. 207, 255 P.3d 80 (citing Olson v. Dept. of Revenue, 223 Mont. 464, 469-70, 726 P.2d 1162, 1166 (1986)). The constitutional requirements have been described as “absolute,” while the prudential limitations contrasted as “malleable.” United Food & Com. Workers v. Brown Group, 517 U.S. 544, 551, 116 S. Ct. 1529, 1533-34 (1996). It is not always clear whether particular features of the standing requirement are constitutionally mandated or prudential. Valley Forge Christian College v. Ams. United for Separation of Church & State, 454 U.S. 464, 471, 102 S. Ct. 752, 758 (1982). However, at an “irreducible minimum,” the Constitution requires the plaintiff to show that he has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action. Heffernan, ¶ 33; Valley Forge, 454 U.S. at 472, 102 S. Ct. at 758. A “personal stake in the outcome of the controversy at the commencement of the litigation” is required in every case. Heffernan, ¶ 30.
¶16 Our holding in Fleenor was premised on two facets of the “injury” requirement. First, we indicated that Fleenor had simply failed to identify an injury. Although she had alleged that “the District failed to properly notify her of votes and decisions leading to the Superintendent’s hiring,” we observed that she had not alleged “that the District’s faulty notice somehow injured or threatened to injure her.” Fleenor, ¶¶ 3, 11. Second, we indicated that Fleenor also had failed to “distinguish herself from the general citizenry and other taxpayers.” Fleenor, ¶ 10. We noted that, “other than establishing that Fleenor resides within the Darby School District, attends some school board meetings, and has no children in school, the record is completely silent as to her personal stake or interest in the matter of the hiring of the Superintendent.” Fleenor, ¶ 11.
*231 ¶17 We now conclude that, first, Fleenor misconstrued the nature of the “injury” at issue in a right to know or right of participation case by requiring the plaintiff to allege an injury beyond failure to receive proper notice or to allege a personal stake in the particular governmental decision taken, there, the Superintendent’s hiring. We believe such requirements impose standing thresholds that are incompatible with the nature of the particular constitutional rights at issue. The right of participation is defined as “the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.” Mont. Const, art. II, § 8 (emphasis added). Agencies are statutorily required to develop procedures for “permitting and encouraging the public to participate in agency decisions that are of significant interest to the public.” Section 2-3-103(l)(a), MCA. Such procedures must ensure “adequate notice” and include “a method of affording interested persons reasonable opportunity to submit data, views, or arguments, orally or in written form, prior to making a final decision.” Sections 2-3-103(l)(a), -111(1), MCA. Obviously, an opportunity to participate cannot occur unless adequate notice is first provided pursuant to the right to know.
¶18 “No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions ... .” Mont. Const, art. II, § 9. The Legislature has declared that “public agencies in this state exist to aid in the conduct of the peoples’ business” and that the people “do not wish to abdicate their sovereignty to the agencies which serve them.” Section 2-3-201, MCA. To that end, “actions and deliberations of all public agencies shall be conducted openly.” Section 2-3-201, MCA. Schoof has the right to “observe” the deliberations of the Commissioners.
¶19 Under the plain language of Article II, Sections 8 and 9, and the implementing statutes, the personal stake that Schoof has here is the reasonable “opportunity” to observe and participate in the Commissioners’ decision-making process, including submission of information or opinions. To vindicate these rights Schoof should not be required to demonstrate a personal stake in the “cash in lieu” policy or an “injury” beyond being deprived of adequate notice of the Commissioners’ proposed action and the corresponding opportunity to observe and participate as a citizen in the process. Otherwise, the constitutional rights to know and participate could well be rendered superfluous because members of the public would be unable to satisfy *232 traditional standing requirements to properly enforce them.
¶20 Secondly, in Fleenor we reasoned that a plaintiffs injury must be “distinguishable from the injury to the public generally.” Fleenor, ¶ 9. We held that “persons who fail to allege any personal interest or injury, beyond that common interest of all citizens and taxpayers, lack standing.” Fleenor, ¶ 9 (citations omitted). We conclude now that we misapplied this requirement in Fleenor-, its actual purpose is to ensure that the plaintiffs alleged injury is “concrete,” and not “abstract.” Ned. Election Commn. v. Akins, 524 U.S. 11, 20-23, 118 S. Ct. 1777, 1784-86 (1998). As made in our law, this distinction can be traced back to Chovanak v. Matthews, 120 Mont. 520, 188 P.2d 582 (1948). There, we explained that in order to establish a justiciable case or controversy, the plaintiff must show “that he has sustained, or is in immediate danger of sustaining some direct injury ... and not merely that he suffers in some indefinite way in common with people generally.” Chovanak, 120 Mont. at 526, 188 P.2d at 585 (citing Mass. v. Mellon, 262 U.S. 447, 488, 43 S. Ct. 597, 601 (1923)). More recently, in discussing this rule, the United States Supreme Court explained:
[t]his Court... has often said that “generalized grievances” are not the kinds of harms that confer standing. [Citations to various cases, including Mellon, 262 U.S. at 487, 43 S. Ct. at 601.] Whether styled as a constitutional or prudential limit on standing, the Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance.
Akins, 524 U.S. at 23, 118 S. Ct. at 1785. The Akins Court noted that the rule against adjudication of generalized grievances “invariably appears in cases where the harm at issue is not only widely shared, but is also of an abstract and indefinite nature — for example, harm to the ‘common concern for obedience to law.’ ” 524 U.S. at 23, 118 S. Ct. at 1785 (emphasis added). The Supreme Court then clarified:
Often the fact that an interest is abstract and the fact that it is widely shared go hand in hand. But their association is not invariable, and where a harm is concrete, though widely shared, the Court has found “injury in fact.” ... Thus the fact that a political forum may be more readily available where an injury is widely shared ... does not, by itself, automatically disqualify an interest for Article III purposes. Such an interest, where sufficiently concrete, may count as an “injury in fact.”
Akins, 524 U.S. at 24,118 S. Ct. at 1786 (citations omitted) (emphases *233 added).
¶21 Accordingly, the critical issue in the instant case is not whether Schoof “allege[s] an injury that is distinguishable from the injury to the public generally.” See Fleenor, ¶ 9; see also Bd. of Trs. v. Cut Bank Pioneer Press, 2007 MT 115, ¶ 15, 337 Mont. 229, 160 P.3d 482; Bryan v. Yellowstone Co. Elementary Sch. Dist. No. 2, 2002 MT 264, ¶ 20, 312 Mont. 257, 60 P.3d 381; Armstrong v. State, 1999 MT 261, ¶ 6, 296 Mont. 361, 989 P.2d 364. As we have noted, “ ‘[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody.’ ” Helena Parents Commn. v. Lewis & Clark Co. Commrs., 277 Mont. 367, 374, 922 P.2d 1140, 1144 (1996) (emphasis omitted) (quoting U.S. v. Students Challenging Reg. Agency Procs., 412 U.S. 669, 688, 93 S. Ct. 2405, 2416 (1973)). Rather, the issue is whether Schoofs injury is sufficiently “concrete.” Since the alleged injury is premised on the violation of constitutional and statutory rights, standing depends on “whether the constitutional or statutory provision ... can be understood as granting persons in the plaintiffs position a right to judicial relief.” Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206 (1975). Importantly, the governing provisions in this case are directed to the citizen: “The public” has the right to be afforded reasonable opportunity for “citizen participation” in the operation of governmental agencies. Mont. Const, art. II, § 8. “No person” shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies. Mont. Const, art. II, § 9. Procedures must afford “interested persons” reasonable opportunity to submit data, views, or arguments prior to making a final decision. Section 2-3-111(1), MCA. “Every citizen” has a right to inspect and take a copy of any public writings of this State (with certain exceptions). Section 2-6-102(1), MCA. All meetings of governmental bodies must be open to “the public.” Section 2-3-203(1), MCA. Agencies must develop procedures permitting and encouraging “the public” to participate in agency decisions. Section 2-3-103(l)(a), MCA. When a governmental agency fails to provide proper notice of a meeting, see §§ 2-3-103 to -107, MCA, or holds an unlawful closed meeting, see § 2-3-203, MCA, or denies reasonable opportunity to submit data, views, or arguments prior to making a final decision, see § 2-3-111, MCA, the “harm is concrete, though widely shared,” see Akins, 524 U.S. at 24, 118 S. Ct. at 1786.
¶22 Moreover, at the time the Commissioners allegedly held their closed meeting, § 2-3-114, MCA (2005), provided: “The district courts *234 of the state have jurisdiction to set aside an agency decision under this part upon petition made within 30 days of the date of the decision of any person whose rights have been prejudiced.” (Emphasis added.) In Druffel v. Bd. of Adjustment, 2007 MT 220, ¶ 17, 339 Mont. 57, 168 P.3d 640, we interpreted similar “any person” language under § 76-2-327, MCA, as conferring broad standing rights on the aggrieved party to pursue the statutory remedy at issue. We applied the rule that the plain meaning of a statute controls our interpretation if the Legislature’s intent can be determined from it. Druffel, ¶¶ 16-17. In this case, it is clear that the Legislature intended to grant relief to “any person whose rights have been prejudiced.”[3]
¶23 Given the participatory rights Schoof seeks to vindicate, we conclude that he has alleged a sufficiently concrete injury to satisfy standing requirements.
¶24 A question naturally arises regarding how far a citizen’s standing extends. The comments of the Constitutional Convention delegates indicate that the right of participation was intended to afford citizens a reasonable opportunity to participate in any agency decision that affects them. For example, one delegate stated: “[W]e think that when those rules and those regulations are made that are going to affect our everyday lives, that we should have the right to participate.” Montana Constitutional Convention, Verbatim Transcript, Mar. 7,1972, p. 1661. Another delegate stated: “Montanans want to be a part of their government. They want to know their government and what it is doing. They want to provide input on matters which affect them directly or which they are keenly interested in.” Montana Constitutional Convention, Verbatim Transcript, Mar. 7,1972, p. 1657. This point was made repeatedly during the debate. See Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, pp. 1655,1656,1657,1661,1664,1665,1667. Regarding the right to know, the delegates contemplated a goal of ensuring that “the deliberations and resolution of all public matters must be subject to public scrutiny.” Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1670.
¶25 It is not appropriate in this case to address the parameters of *235 standing for right to know and right of participation claims that may arise in other contexts. However, based on the constitutional language and the delegates’ comments, it is clear that a citizen in Schoofs position who is subject to a governmental agency’s jurisdiction has standing to assert a violation of these provisions. Schoof is a resident of Custer County. Accordingly, we hold that Schoof has standing to pursue further discovery on his claims, and overrule Fleenor to the extent that it is inconsistent with this opinion.
¶26 2. Did the District Court err in dismissing Schoofs right to know and right of participation claims as time barred under §

2- 3-213, MCA?

¶27 The District Court dismissed Schoofs right to know and right of participation claims pursuant to § 2-3-213, MCA, which provides the limitations period for actions arising under § 2-3-203, MCA. Section 2-3- 203, MCA, statutorily codifies the mandate of Article II, Section 9 of the Montana Constitution that meetings of governmental bodies are to be open to the public. Motta v. Philipsburg Sch. Bd. Trs., 2004 MT 256, ¶ 16, 323 Mont. 72, 98 P.3d 673; Bryan, ¶ 24. It provides, in pertinent part:
(1) All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds, including the supreme court, must be open to the public.
(2) All meetings of associations that are composed of public or governmental bodies referred to in subsection (1) and that regulate the rights, duties, or privileges of any individual must be open to the public.
Section 2-3-203(1), (2), MCA.
¶28 As alleged, the Commissioners’ meeting at issue in this case was closed and occurred on July 26, 2007. At that time, § 2-3-213, MCA (2005), provided: “Any decision made in violation of 2-3-203 may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days of the decision.” (Emphasis added.) In 2007, the Legislature amended § 2-3-213, MCA, to add a discovery provision to the 30-day limitations period: “A suit to void a decision must be commenced within 30 days of the date on which the plaintiff or petitioner learns, or reasonably should have learned, of the agency’s decision.” (Emphasis added.) However, the 2007 amendment did not become effective until October 1 of that year. Section 1-2-201, MCA (2007). Accordingly, the 2005 version of the *236 statute was still in effect and provides the limitations period for Schoofs right to know claim.
¶29 Similarly, § 2-3-114, MCA (2005), set forth a 30-day limitations period for claims brought pursuant to § 2-3-101, et seq., MCA-“secur[ing] to the people of Montana their constitutional right to be afforded reasonable opportunity to participate in the operation of governmental agencies prior to the final decision of the agency.” Section 2-3-101, MCA. Like § 2-3-213, MCA, the Legislature amended § 2-3-114, MCA, in 2007 to include a discovery provision. The District Court in the instant case did not apply § 2-3-114, MCA, to Schoofs right of participation claim, but instead dismissed it under § 2-3-213, MCA. Both statutes contain parallel language and provide a 30-day limitations period, so the court’s decision did not affect its analysis in any way. As Appellees correctly note, all of the elements giving rise to Schoofs right to know and right of participation causes of action arose when the Commissioners closed their meeting to the public on July 26, 2007. Schoof did not file this action until September 16,2011-over four years later. Based on a plain reading of § 2-3-213, MCA, and § 2-3-114, MCA, Schoofs claims would be time barred.
¶30 Schoof does not dispute that he filed beyond the 30-day limitations period, but instead urges us to apply the discovery provision within § 27-2-102(3), MCA, to toll the limitations period. He cites our decisions in Weidow v. Uninsured Employers Fund, 2010 MT 292, 359 Mont. 77, 246 P.3d 704; BNSF Ry. Co. v. Cringle, 2010 MT 290, 359 Mont. 20, 247 P.3d 706 (Cringle I); Lozeau v. GEICO Indem. Co., 2009 MT 136, 350 Mont. 320, 207 P.3d 316; and Harrison v. Chance, 244 Mont. 215, 797 P.2d 200 (1990), and argues that “[wjhile the circumstances under which the doctrine of equitable tolling has been applied in the foregoing cases are not similar to the instant case, certain general tolling principles underlying application of the doctrine are apposite.” He further argues for “a ‘discovery rule’ which tolls the limitations period until the date the plaintiff discovered or through due diligence could have discovered its cause of action. The common law called this principle ‘equitable tolling.’ ” Finally, he urges that “[t]his equitable principle must be applied in open-meeting cases.”
A. Section 27-2-102(3), MCA
¶31 Section 27-2-102(3), MCA, provides:
The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party *237 if:
(a) the facts constituting the claim are by their nature concealed or self-concealing; or
(b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause.
The District Court declined to apply § 27-2-102(3), MCA, for two reasons. First, it determined that Schoof failed to meet the “injury to person or property” requirement of the statute. Citing the United States Supreme Court in Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 306-10, 106 S. Ct. 2537, 2542-45 (1986), the District Court determined that not every violation of a constitutional right involves injury to person or property. Second, the District Court reasoned that the 2007 Legislature would not have amended § 2-3-213, MCA, to include a discovery rule if the previous version was already subject to § 27-2-102(3), MCA. Appellees raise substantially these same arguments in their brief and cite our language in Kadillak v. Anaconda Co., 184 Mont. 127, 140, 602 P.2d 147, 155 (1979), stating that the right of participation claim made in that case was barred because it was filed beyond the 30-day limitations period. Schoof responds that this Court has never interpreted the “injury to person or property” requirement of § 27-2-102(3), MCA, that no implications should be drawn from the Legislature’s 2007 amendment to § 2-3-213, MCA, and that Kadillak’s reasoning on this issue was dicta.
¶32 We have not previously interpreted § 27-2-102(3), MCA, as applying to right to know or right of participation claims, or recognized these claims as “injuries] to person or property” that would be necessary to come within the statute. We decline to address these issues here. Instead, we believe common law equitable tolling appropriately resolves the matter. Therefore, we need not assess the Legislature’s reasons for amending § 2-3-213, MCA, (or § 2-3-114),[4] nor dissect our decision in Kadillak. It is enough to note that the Court did not consider or address equitable tolling in that case.
B. Equitable tolling
*238 ¶33 The doctrine of equitable tolling arrests the running of the limitations period after a claim has accrued, allowing “in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines.” Lozeau, ¶ 14. We have previously utilized a narrow, three-part test in applying the doctrine:
the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.
Lozeau, ¶ 14 (citing Let the People Vote v. Bd. of Co. Comm, of Flathead Co., 2005 MT 225, ¶ 18, 328 Mont. 361, 120 P.3d 385).
¶34 While this three-part test is appropriate in cases involving alternate legal remedies, the rationale behind the doctrine of equitable tolling serves broader purposes than merely those embodied by this test. “The policy behind the doctrine of equitable tolling is ... to ‘avoid forfeitures and allow good faith litigants their day in court.’ ” Brilz v. Metro. Gen. Ins. Co., 2012 MT 184, ¶ 16, 366 Mont. 78, 285 P.3d 494 (quoting Addison v. State, 578 P.2d 941, 945 (Cal. 1978)). A plaintiff should not be deprived of his or her claims “when such an approach would serve no policy purpose.” Weidow, ¶ 28. We have emphasized “ ‘the importance of applying procedural bars regularly and consistently,’ ” Weidow, ¶ 28 (citation omitted), acknowledged that firm deadlines for filing an appeal “ ‘advance the interests of the parties and the legal system in fair notice and finality,’ ” Cringle II, ¶ 21 (majority) (citation omitted), and imposed upon parties the “ ‘duty to monitor litigation.’ ” Cringle II, ¶ 21 (citations omitted). However, we have also recognized that equitable principles excuse strict compliance with categorical time bars in some cases. Cringle II, ¶ 21. Here, it is alleged that the Commissioners adopted a policy during an unannounced meeting and failed to provide sufficient information in the meeting minutes to advise the public of that action, thus preventing a good faith litigant from filing a timely claim. We cannot permit the constitutional right to know and right of participation to be abrogated by a failure to provide notice or adequate information, as alleged.
¶35 This Court has previously considered adoption of aspects of federal equitable tolling rules. See Arthur v. Pierre Ltd., 2004 MT 303, ¶¶ 40-42, 323 Mont. 453, 100 P.3d 987 (discussing federal equitable tolling in sexual discrimination context); Cringle II, ¶ 23 (discussing *239 federal equitable tolling in employment discrimination context). The Second Circuit Court of Appeals has held that equitable tolling may extend a statute of limitations in “ ‘rare and exceptional circumstances,’ ” Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000) (citations omitted), when the “defendant is responsible for concealing the existence of plaintiffs cause of action.” Veltri v. Bldg. Serv. 32b-J Pension Fund, 393 F.3d 318, 323 (2d Cir. 2004). While such conduct is “often itself fraudulent,” equitable tolling for this purpose does not require that the defendant’s conduct rise to the level of fraud, or even be intentional, but only that the nature of the defendant’s actions has concealed from the plaintiff the existence of the claim. Veltri, 393 F.3d at 323 (citing Cerbone v. International Ladies’ Garment Workers’ Union, 768 F.2d 45, 48 (2d Cir. 1985)). This relief is only available when the plaintiff is actually prevented from filing on time despite exercising “that level of diligence which could reasonably be expected in the circumstances.” Veltri, 393 F.3d at 322; see also Cringle II, ¶ 21 (relief from a filing deadline “requires, at a minimum, reasonable effort to pursue one’s legal rights” (citing Puhto v. Smith Funeral Chapels, Inc., 2011 MT 279, ¶ 14, 362 Mont. 447, 264 P.3d 1142)).
¶36 Taken as true, Schoof s allegations qualify for application of these equitable tolling principles. Schoof contends that, despite his diligent scrutiny of the Commissioners’ actions, neither he nor the public learned or could have learned about the “cash in lieu” policy until four years after it had been adopted, at which time he promptly filed suit. The reason for the delay, as alleged by Schoof, is the Commissioners’ actions in holding a closed meeting and failing to publish sufficient information about their decision for the public to be notified. If proven, these circumstances would justify the equitable tolling of the 30-day limitations period for the period of concealment, pursuant to the principles stated herein.
¶37 Adoption of these principles supplements, rather than overrules, our prior equitable tolling jurisprudence. The three-part test applied in Lozeau and other cases still presents a viable framework for resolving tolling issues where alternative legal remedies exist. However, this Court has “rejected] any one-size-fits-all approach that would serve only to undermine the purpose of the equitable tolling doctrine and... deprive a plaintiff of his or her rights....” Weidow, ¶ 28. Our holding today merely applies the doctrine to those instances where a plaintiff is substantially prejudiced by a defendant’s concealment of a claim, despite the exercise of diligence by the plaintiff.
¶38 Statutes of limitations provide “a reasonable means of preventing *240 stale claims and ensuring that claims are filed. before essential evidence disappears.” Harrison, 244 Mont. at 226, 797 P.2d at 206. However, the alleged concealing conduct in this case, coupled with the overriding constitutional importance of transparency in local government, see § 2-3-201, MCA, requires application of equitable tolling principles if the allegations of the complaint are factually established.
¶39 3. If the Commissioners’ “cash in lieu” policy is determined to he void, does mandamus lie to compel recovery of illegal payments under § 7-4-2714, MCA?
¶40 Schoofs remaining issue on appeal focuses on the propriety of mandamus to require the Custer County Attorney to collect any illegal “cash in lieu” payments that have been made to the Commi ssi oners. Schoof argues that “[i]f the lower court set aside the decision made in the course of the illegal meeting there was no basis for making the cash payments ... and the County Attorney has an obligation to recover the payments ....” Schoof thus premises the validity of his mandamus claim on the possibility of receiving a court order setting aside the Commissioners’ decision sometime in the future. This Court “ ‘will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative.’ ” Havre Daily News, LLC v. City of Havre, 2006 MT 215, ¶ 19, 333 Mont. 331, 142 P.3d 864 (citation omitted). No order setting aside the Commissioners’ decision has been issued in this case. Therefore, Schoofs mandamus argument is hypothetical, and we decline to reach its merits today.
CONCLUSION
¶41 It is possible that, with the application of equitable tolling principles, Schoof could prove a “set of facts in support of his claim that would entitle him to relief.” Pederson, ¶ 8. Further proceedings will be required. Although the District Court observed that there were “substantial factual indicia that Defendants conducted their July 26, 2007 meeting in violation of Montana’s open meetings law and Article II, Sections 8 and 9 of the Montana Constitution,” the record in this case does not establish what notice, if any, the public actually received, both before and after the meeting in question, nor what diligence Schoof exercised in ascertaining his claims. Having concluded that Schoof has standing to pursue his claims, we reverse and remand for further proceedings consistent herewith.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT and BAKER concur.

 Schoof s complaint names current and former Custer County Commissioners and the Custer County Attorney as defendants. Schoof alleges that Defendants Nesbit, Huber, and Matthews served as commissioners during 2007, and that Defendants Nesbit, Ellingson, Parker, Holmlund, Huber, and Harbaugh received cash payments in lieu of health insurance premiums during their respective tenures as commissioners. Defendant Glade is the Custer County Attorney.

 Schoofs complaint cites § 2-2-102, MCA, as the statutory authority for his right of participation claim, but the right of participation provision is actually codified at § 2-3-103, MCA.

 While we recognize that § 2-3-114, MCA, generally applies to right of participation claims and § 2-3-213, MCA, generally applies to right to know claims, there is a “fundamental link between the right to know and participate.” Bryan, ¶ 30. Therefore, we see no reason to distinguish between these closely related provisions for purposes of standing in this case.

 This is certainly not a case where “the Legislature goes further and dictates that a decision ‘is not appealable’ if it is not appealed within the specified timeframe.” BNSF Ry. Co. v. Cringle, 2012 MT 143, ¶ 31, 365 Mont. 304, 281 P.3d 203 (Cringle II) (Nelson, Cotter, & Rice, JJ. concurring). Indeed, there is no indication that the Legislature intended to preclude exceptions to the time bars contained in § 2-3-213, MCA, or § 2-3-114, MCA. See Cringle II, ¶ 30 (Nelson, Cotter, & Rice, JJ. concurring).