FILED

May 12 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0380

DA 14-0380

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 127

JESSICA GAZELKA,

        Plaintiff, Appellant, and Cross-Appellee,

    v.

ST. PETER'S HOSPITAL,

        Defendant, Appellee, and Cross-Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. DDV 2011-913
                      Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                John M. Morrison, Morrison, Sherwood, Wilson, & Deola PLLP,
                Helena, Montana

                Lawrence A. Anderson, Attorney at Law, P.C., Great Falls, Montana

        For Appellee:

                Randy J. Cox; Thomas J. Leonard; Randy J. Tanner, Boone Karlberg,
                P.C., Missoula, Montana

                            Submitted on Briefs:  April 1, 2015
                                      Decided:  May 12, 2015

Filed:

                             _____
                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Jessica Gazelka sued St. Peter's Hospital in the First Judicial District Court, Lewis and Clark County, alleging that the Hospital discriminated against her based on her lack of health insurance. We address the following issues on appeal:

1. *Whether the District Court erred in determining that Gazelka has standing.*

2. *Whether the District Court erred in awarding the Hospital summary judgment on the merits.*

¶2 We affirm the District Court's determination that Gazelka has standing, and vacate and remand the District Court's order granting summary judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In early 2010, Gazelka had no health insurance when she was involved in a motor vehicle accident in Helena. She received treatment from the Hospital. The driver of the vehicle that struck Gazelka had a Safeco vehicle insurance policy with a $100,000 general liability limit. In accordance with *Ridley v. Guar. Nat'l Ins. Co.*, 286 Mont. 325, 951 P.2d 987 (1997), Safeco paid the Hospital for some of Gazelka's medical bills. When Safeco settled for the $100,000 liability limit, the *Ridley* payments were deducted from the settlement funds that Gazelka received.

¶4 In early 2011, Gazelka again was uninsured and received treatment from the Hospital. She did not pay for the treatment. The Hospital referred Gazelka's account to a debt collector, which sued Gazelka and received a judgment against her.

¶5 In September 2011, Gazelka filed suit against the Hospital, alleging that the Hospital violated Montana anti-trust laws and Article II, Section 4 of the Montana

2

Constitution by discriminating against her on the basis of her uninsured status. Gazelka's complaint centers on preferred provider agreements (PPAs). PPAs are agreements between insurers and healthcare providers regarding the amount and the manner of payment that providers will accept as satisfaction for treatment rendered to insured persons. The undisputed evidence shows that the Hospital has PPAs with several insurers. Thus, Gazelka alleges that while the initial amount the Hospital charges to a patient remains the same regardless of the patient's insurance status, the actual amount the Hospital will accept as full compensation for its services depends on whether the patient has insurance and which company provides that insurance. The Montana Preferred Provider Agreements Act (MPPAA) authorizes PPAs. Sections 33-22-1701 through 1707, MCA.

¶6 Gazelka argues that the MPPAA is unconstitutional. Without valid statutory authorization, she argues that the Hospital's billing practices violate state anti-trust laws. Moreover, she argues that the Hospital's billing practices are themselves unconstitutional. She seeks to certify a class action on behalf of persons who have been discriminated against on the basis of their insurance status.

¶7 In November 2011, the Hospital moved to dismiss Gazelka's complaint. Among other things, the Hospital argued that Article II, Section 4 is not self-executing and does not provide a cause of action against a private party; that Gazelka failed to follow the Montana Human Rights Act's mandatory administrative process for resolving

3

discrimination disputes; and that Gazelka's allegations did not state a claim for unconstitutional conduct. The District Court denied the motion.[1]

¶8 After that ruling, the parties and the District Court apparently decided to litigate standing and constitutional claims before turning to class certification. In January 2013, Gazelka moved for partial summary judgment, arguing that she was entitled to judgment that (1) the Hospital's billing practices are unconstitutional, and (2) the MPPAA is unconstitutional. The Hospital responded by arguing that Gazelka's motion was premature. It sought to continue discovery under M. R. Civ. P. 56(f), and, in the alternative, moved for summary judgment on the ground that Gazelka lacks standing.

¶9 In May 2014, the District Court ruled on the summary judgment motions. The court concluded that Gazelka has standing. But, after determining that uninsured persons are not a protected class under the Montana Constitution, the court awarded summary judgment to the Hospital on the merits and dismissed the suit. The parties filed cross-appeals. Gazelka attacks the entry of summary judgment on the merits, while the Hospital appeals the standing determination.

## STANDARDS OF REVIEW

¶10 Standing is a threshold question that this Court determines as a matter of law and reviews de novo. *Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶¶ 16, 19, 366 Mont. 450, 288 P.3d 193. We also review summary judgment orders de novo. *Albert v. City of*

---

[1] In this opinion, we will assume without deciding that Article II, Section 4 provides a right of action against private actors in addition to the right provided by the Montana Human Rights Act, and that that right may be exercised without following the Montana Human Rights Act's administrative process. Neither party has appealed these issues.

*Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704.  Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15.

## DISCUSSION

¶11   *1. Whether the District Court erred in determining that Gazelka has standing.*

¶12   Standing doctrine addresses whether a litigant is entitled to have a court resolve a dispute in light of the adverseness of the parties, their stakes in the matter, the dispute's concreteness, and the judiciary's function.  *See Chipman*, ¶ 25.  In Montana, a plaintiff has standing if she suffers an actual or threatened injury that is redressable through her action's success.  *Chipman*, ¶ 26.

¶13   The District Court concluded that Gazelka has standing on the basis of a financial injury arising from treatment at the Hospital in early 2011.  The Hospital charged Gazelka a non-discounted amount for that treatment and, after Gazelka failed to pay, referred Gazelka to collections for that amount.  On appeal, the Hospital argues that Gazelka's failure to pay the non-discounted amount was "a clear attempt to manufacture standing" and thus not a real financial injury.  Further, the Hospital argues that non-discounted amounts that Gazelka was charged in 2010 did not cause her a financial injury because those amounts were paid by Safeco, the insurer of the driver whose vehicle collided with Gazelka's.

5

¶14 We do not address these financial injury arguments. Under the claims that Gazelka alleges, she need not show a financial injury to have standing. In *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 113 S. Ct. 2297 (1993) (*Contractors*), the United States Supreme Court discussed standing in the context of the United States Constitution's equal protection clause:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The injury in fact in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Contractors*, 508 U.S. at 666, 113 S. Ct. at 2303 (internal quotation marks omitted).

¶15 Gazelka alleges discrimination claims under the Montana Constitution's equal protection and equal treatment provisions. These provisions state,

> No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

Mont. Const. art. II, § 4. We often look to the federal courts for guidance in applying Montana's standing requirements, *see Heffernan v. Missoula City Council*, 2011 MT 91, ¶¶ 32-33, 360 Mont. 207, 255 P.3d 80; *Olson v. Dept. of Revenue*, 223 Mont. 464, 469-71, 726 P.2d 1162, 1166-67; and equal protection guarantee, *see Powder River Cnty. v. State*, 2002 MT 259, ¶ 79, 312 Mont. 198, 60 P.3d 357; *Stratemeyer v. Lincoln Cnty.*, 259 Mont. 147, 152, 855 P.2d 506, 509 (1993). In the context of claims brought to redress an alleged violation of Montana's equal protection provisions, the injury in fact

that Gazelka needs to show is the "denial of equal treatment resulting from the imposition of [a] barrier." *Contractors*, 508 U.S. at 666, 113 S. Ct. at 2303. *See also Schoof v. Nesbit*, 2014 MT 6, ¶¶ 19-23, 373 Mont. 226, 316 P.3d 831 (concluding that the plain language of Article II, Sections 8 and 9 of the Montana Constitution confers a personal stake sufficient to establish standing for a plaintiff seeking to vindicate the rights guaranteed by those sections).

¶16 Gazelka attacks the Hospital's practices and the MPPAA—which arguably authorizes those practices—as barriers to her equal treatment. Gazelka submitted evidence that the Hospital accepts a lesser charge as satisfaction for services as a matter of course from patients with PPA insurers, but not from patients without insurance or without PPA insurers. This alleged unequal treatment and unequal opportunity to obtain a benefit is an injury for standing purposes.

¶17 The Hospital argues that a court cannot redress Gazelka's injury because Gazelka has no right to benefit from PPAs to which she is not a party. *See Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 20, 365 Mont. 71, 278 P.3d 1002 ("A stranger to a contract lacks standing to sue for breach of that contract unless he is an intended third-party beneficiary of the contract."). But Gazelka does not allege breach of contract; she alleges discrimination. She seeks a declaratory judgment that the MPPAA is unconstitutional, a declaratory judgment that the Hospital's practices are unlawful, and an injunction prohibiting further unequal treatment. These orders, if awarded, would likely "significantly affect," *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 7 (D.C.

7

Cir. 2005), the injury of unequal treatment and unequal opportunity that Gazelka alleges. The controversy before the Court is a controversy in which "the judgment of [a] court may effectively operate" and have the "effect of a final judgment in law or decree in equity upon the right, status or legal relationships of one or more of the real parties in interest." *Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶ 15, 329 Mont. 511, 127 P.3d 359 (citations omitted). Gazelka's injury is redressable with or without awarding her PPA benefits.

¶18 Although on different grounds, we affirm the District Court's standing determination.

¶19 *2. Whether the District Court erred in awarding the Hospital summary judgment on the merits.*

¶20 Gazelka's suit against the Hospital alleges different claims that require explanation before examining the District Court's determination on the merits. Gazelka argues that the Hospital's billing practices and the MPPAA both violate Article II, Section 4 of the Montana Constitution. As recounted above, Article II, Section 4, states:

> No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

Gazelka alleges that the Hospital is a corporation that discriminated against her in the exercise of a civil right on the basis of a social condition. She further alleges that the MPPAA discriminates against her on the basis of a social condition, thus triggering strict scrutiny, which she argues the MPPAA cannot withstand. In the alternative, she alleges

that the MPPAA deprives her of equal protection of the laws even if not on the basis of a social condition, thus triggering rational-basis review, which she argues the MPPAA cannot withstand. Finally, Gazelka alleges that the Hospital's billing practices unlawfully restrain trade in violation of § 30-14-205, MCA.

¶21 The District Court entered judgment in favor of the Hospital after determining that Gazelka's uninsured status is not a social condition under Article II, Section 4. The court, however, did not address Gazelka's remaining arguments, which the Hospital had not yet briefed. The District Court's social condition ruling disposes of Gazelka's claim that the Hospital and the MPPAA violated Article II, Section 4's prohibition on discriminating "on account of race, color, sex, culture, social origin or condition, or political or religious ideas." But that determination does not necessitate the conclusion that the MPPAA does not deprive Gazelka of equal protection of the laws. When a statute treats similarly situated individuals dissimilarly, but not on the basis of a suspect classification or in the exercise of a fundamental right, a court must subject the discriminating statute to rational-basis review. *McDermott v. Mont. Dep't of Corr.*, 2001 MT 134, ¶¶ 31-32, 305 Mont. 462, 29 P.3d 992. The District Court did not determine whether Gazelka was treated differently from similarly situated individuals, and it did not determine whether the MPPAA satisfies rational-basis review. Also, the District Court did not determine whether the Hospital's conduct violates § 30-14-205, MCA. The determinations that the District Court did make in its summary judgment order did not

9

resolve all of Gazelka's claims. Accordingly, the District Court erred by entering judgment.

¶22 This Court retains authority to remand cases that require further proceedings. *See Bates v. Neva*, 2013 MT 246, ¶ 20, 371 Mont. 466, 308 P.3d 114. We exercise that authority now. We express no view on the merits of Gazelka's claims, and decline at this juncture to resolve the propriety of the District Court's social condition ruling.

**CONCLUSION**

¶23 We affirm the District Court's standing determination, but reverse its entry of summary judgment on the merits. We remand for further proceedings on Gazelka's remaining claims.


/S/ BETH BAKER

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶24 I dissent from our conclusion that Gazelka has established standing. The standing arguments now adopted by the Court are not those raised or briefed by Gazelka, and consequently, she has not alleged facts that would allow her to prevail under the theory advanced by the Court.

10

¶25 The Court correctly notes that it need not be demonstrated in every equal protection case that the disadvantaged party would have actually received the benefit sought. Opinion, ¶ 14. Rather, the disadvantaged party must demonstrate that he or she was deprived of the equal opportunity to pursue or apply for the benefit. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666, 113 S. Ct. 2297, 2303 (1993). The benefit afforded insurers and their customers under the PPA statutes is the opportunity to enter into agreements with providers relating to the amounts an insured may be charged for services. Section 33-22-1704, MCA. To demonstrate that the PPA statutes violate equal protection, Gazelka must demonstrate that she has been deprived of this benefit.

¶26 Gazelka's standing arguments before the District Court and on appeal are premised on the idea that she was injured by paying a higher rate for health care services, not that she was injured by being excluded from the opportunity to negotiate with the Hospital for lower rates. Indeed, the facts appear to demonstrate that Gazelka was offered, and took advantage of, financial assistance which reduced her unpaid bills by half. Thus, just as a patient covered by a PPA insurer receives a bill for one amount, which is then, pursuant to the PPA, satisfied by payment of a lesser amount, Gazelka received a bill for one amount, which was then, pursuant to the financial assistance program, satisfied by payment of a lesser amount. She has not demonstrated that she was deprived of the opportunity to pursue an agreement relating to the amount charged for services rendered.

11

¶27     The underlying aim of this litigation is to demonstrate that PPAs, while favorable to the insured, lead to the undesirable—one might even argue perverse—result that the uninsured and often indigent are required to pay more for health care.  While Gazelka's ultimate goal in this litigation may be an attempt to highlight the structural and systemic problems of our health care system, both in Montana and nationally, the judiciary is not the appropriate forum for such a statement.  Rather, the problem, which is worth addressing, is best left to the political branches of government.  This Court would be wise to apply well-established principles of standing and resist the urge to transgress into an area best left to the Montana Legislature.  For the foregoing reasons, I dissent.


/S/ LAURIE McKINNON