DA 14-0111

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 281

J. G. SHOCKLEY,

      Plaintiff and Appellant,

    v.

CASCADE COUNTY, JASON CARROLL, and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 2,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
                     In and For the County of Cascade, Cause No. ADV 10-534 C
                     Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Peter Michael Meloy, Attorney at Law; Helena, Montana

        For Appellees:

        D. Patrick McKittrick, Timothy J. McKittrick, Attorneys at Law; Great Falls,
        Montana

        Carey Ann Shannon, Deputy County Attorney; Great Falls, Montana

                                   Submitted on Briefs:  July 23, 2014
                                           Decided:  October 21, 2014

Filed:

                                      Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     J. G. Shockley appeals from the judgment of the Eighth Judicial District Court, Cascade County, dismissing on summary judgment his petition seeking disclosure of certain documents from Cascade County. The sole issue on appeal is whether Shockley has standing to assert a claim under Montana's Right to Know, codified in Article II, Section 9 of the Montana Constitution.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     Appellant J. G. Shockley is a former Montana State Senator and a resident of Ravalli County. In 2009, Shockley requested certain documents from the Cascade County Attorney relating to the termination of a County Detention Officer, Jason Carroll. Shockley requested the documents as a Montana citizen, not as a legislator.

¶3     Carroll was a Detention Officer in Cascade County and a member of a collective bargaining unit represented by the International Brotherhood of Teamsters, Local No. 2 (Union). The County terminated Carroll's employment and the Union brought a grievance on his behalf, ultimately reaching a settlement with the County. Shockley requested Carroll's personnel and disciplinary records, including the settlement agreement. The Cascade County Attorney advised Shockley to petition the District Court for release of the records under the Right to Know provision of Article II, Section 9 of the Montana Constitution.

¶4     On May 27, 2010, Shockley filed a pro se petition in Cascade County requesting the documents. Shockley subsequently retained counsel and amended his petition to join Carroll

2

and the Union as parties to the litigation. Both Carroll and Cascade County withdrew any objection to release of the documents, but the Union persisted in its objection to Shockley's petition. Shockley and the Union filed cross motions for summary judgment in August 2013.

¶5 For most of the time this case was pending in the District Court, standing in right to know cases was controlled by our decision in *Fleenor v. Darby School District*, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048. That case required a plaintiff alleging violation of Montana's Right to Know (Article II, Section 9), or right to participate (Article II, Section 8), to allege a personal stake in, or injury from, the acts of the public body at issue. On January 10, 2014, the District Court granted summary judgment in favor of the Union, citing our *Fleenor* decision, and held that Shockley did not have standing to request the records because he failed to clearly allege a past, present, or threatened injury connected to the failure to produce the settlement agreement.

¶6 On January 9, 2014, the day before the District Court entered its order granting summary judgment in favor of the Union, we overturned *Fleenor* in *Schoof v. Nesbit*, 2014 MT 6, __ Mont. __, 316 P.3d 831.

¶7 Shockley moved for reconsideration in light of the *Schoof* decision. Although the District Court agreed that *Schoof* was controlling precedent, it denied Shockley's motion. The District Court held that Shockley's situation was distinguishable from *Schoof* because he was neither a resident nor subject to the jurisdiction of Cascade County and therefore lacked standing to request the documents.

¶8 Shockley appeals that decision. We reverse and remand for further proceedings.

**STANDARD OF REVIEW**

¶9    We review de novo a district court's ruling on motions for summary judgment. *Dewey v. Stringer*, 2014 MT 136, ¶ 6, 375 Mont. 176, 325 P.3d 1236. "A district court's determination regarding standing presents a question of law which we review de novo for correctness." *Mont. State Fund v. Simms*, 2012 MT 22, ¶ 14, 364 Mont. 14, 270 P.3d 64.

**DISCUSSION**

*Does Shockley, a resident of Ravalli County, have standing to assert a claim under Article II, Section 9 of the Montana Constitution for records of a Cascade County government body?*

¶10    We are called on here to determine whether a resident of one Montana county has standing to assert a right-to-know claim for documents from the government of another Montana county. We hold that he does.

¶11    In *Schoof*, we overruled *Fleenor* because it used a test for standing that was incompatible with the right to know and right to participate. We held that, when the alleged injury is premised on the violation of constitutional and statutory rights, standing is determined by asking "whether the constitutional or statutory provision can be understood as granting persons in the plaintiff's position a right to judicial relief." *Schoof*, ¶ 21 (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206 (1975)) (internal ellipses omitted).

¶12    The plaintiff in *Schoof*, a resident of Custer County, alleged that Custer County denied his right to participate in, and know the results of, a meeting of the Custer County Commissioners. The district court in *Schoof* held that under *Fleenor*, Schoof did not have

4

standing because he had not alleged any injury connected to the meeting of the Custer County Commissioners.

¶13 On appeal, we concluded that *Fleenor* misconstrued standing in right-to-know and right-to-participate cases in two ways. First, *Fleenor* misconstrued the nature of the injury at issue in a right-to-know or right-to-participate case by requiring the plaintiff to either allege an injury beyond failure to receive proper notice, or to allege a personal stake in the particular governmental decision taken. *Schoof*, ¶ 17.

¶14 Second, we determined that *Fleenor* mistakenly required that a plaintiff's injury be "distinguishable from the injury to the public generally." *Schoof*, ¶ 20. We have long held that a plaintiff's injury must be "concrete" for the plaintiff to have standing. *See Bryan v. Yellowstone County Elem. Sch. Dist.*, 2002 MT 264, ¶ 20, 312 Mont. 257, 60 P.3d 381 ("to satisfy the standing requirement, a plaintiff must have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens presentation of issues") (internal quotations omitted); *Olson v. Department of Revenue*, 223 Mont. 464, 469, 726 P.2d 1162, 1166 (1986); *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, (1962). In *Schoof*, we noted that the "injury distinguishable from the injury to the public generally" requirement was simply meant to ensure that a plaintiff's injury is "concrete" and not "abstract." *Schoof*, ¶ 20. We noted that even where the plaintiff alleges an injury that is widely shared, so long as the injury is concrete, there is still standing. *Schoof*, ¶ 21.

¶15 In sum, *Schoof* held that the requirements that the plaintiff allege a personal stake in the government decision at issue, and show an injury distinguishable from the injury to the

5

public generally, "impose standing thresholds that are incompatible with the nature of the particular constitutional rights at issue." *Schoof*, ¶ 17. We noted that, "to deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *Schoof*, ¶ 21 (quoting *U.S. v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 688, 93 S. Ct. 2405, 2416 (1973)).

¶16 The bottom line of *Schoof* is our determination of the appropriate test for standing when the alleged injury is premised on the violation of constitutional or statutory rights: "[S]tanding depends on whether the constitutional or statutory provision can be understood as granting persons in the plaintiff's position a right to judicial relief." *Schoof*, ¶ 21 (internal quotations and ellipses omitted).

¶17 Finally, we declined in *Schoof* to determine the scope of standing for right-to-know and right-to-participate claims in all contexts, limiting our holding to the facts then in front of us. We noted that in the context of right-to-know and right-to-participate claims, "A question naturally arises regarding how far a citizen's standing extends." *Schoof*, ¶ 24. We quoted various comments of the Constitutional Convention delegates which indicated that the right of participation was intended to afford citizens a reasonable opportunity to know about and participate in any government decision. We then held:

> It is not appropriate in this case to address the parameters of standing for right to know and right of participation claims that may arise in other contexts. However, based on the constitutional language and the delegates' comments, it is clear that a citizen in Schoof's position who is subject to a governmental agency's jurisdiction has standing to assert a violation of these

6

provisions. Schoof is a resident of Custer County. Accordingly, we hold that Schoof has standing to pursue further discovery on his claims, and overrule Fleenor to the extent it is inconsistent with this opinion.

*Schoof*, ¶ 25.

¶18 The District Court was correct that our holding in *Schoof* was limited to the facts then in front of us: a resident of a county claiming that a branch of his county government violated his right to know and participate. The immediate case now calls on us to further determine how far a citizen's standing extends in claims brought pursuant to the Montana's Right to Know (Article II, Section 9). In particular, we must determine whether Article II, Section 9 grants persons in Shockley's position a right to judicial relief. *Schoof*, ¶ 21.

¶19 We use the same rules to interpret the Constitution that we use to interpret statutes. *City of Missoula v. Cox*, 2008 MT 364, ¶ 9, 346 Mont. 422, 196 P.3d 452. Our role is "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Article II, Section 9 provides:

> **Right to Know.** No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Mont. Const. art. II, § 9.

¶20 Article II, Section 9 does not require that a person be a resident of a county, or subject to its jurisdiction, before that person can examine that county's documents. The language of Article II, Section 9 indicates a broad right to know: "*No person shall be deprived of the*

7

*right to examine documents . . . of all public bodies or agencies of state government and its subdivisions.*" Mont. Const. art. II, § 9 (emphasis added). We have previously held that: "The language of this provision speaks for itself. It applies to all persons and all public bodies of the state and its subdivisions without exception." *Great Falls Tribune v. Dist. Court of Eighth Judicial Dist.*, 186 Mont. 433, 437–38, 608 P.2d 116, 119 (1980). The Legislature similarly gives a broad reading to the right to know: "*Every citizen* has a right to inspect and take a copy of *any public writings of this state . . . .*" Section 2-6-102, MCA (emphasis added). The goal of Article II, Section 9 is government transparency and accountability: "[T]he deliberations and resolution of all public matters must be subject to public scrutiny." Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1670. As one Convention delegate aptly stated: "Montanans want to be a part of their government. They want to know their government and what it is doing. They want to provide input on matters which affect them directly *or which they are keenly interested in*." Montana Constitutional Convention, Verbatim Transcript, Mar. 7, 1972, p. 1657 (emphasis added).

¶21 Our Constitution does not impose a requirement that Montana citizens be subject to the jurisdiction of a particular public body in order to have standing to exercise their right to know. In the absence of any indication of such a requirement, it is not the province of this Court to read one into the Constitution. The plain language of Article II, Section 9 indicates that all Montana citizens have a right to inspect the documents of any public body in the

state, regardless of any nexus between the citizen and the governing body in question—subject, of course, to the privacy restrictions set forth in Article II, Section 9.

¶22 The inquiry to determine standing in an action premised on the violation of constitutional or statutory rights is only "whether the constitutional or statutory provision can be understood as granting persons in the plaintiff's position a right to judicial relief." *Schoof*, ¶ 21. We hold Article II, Section 9 grants a right to judicial relief to a Montana citizen alleging denial of access to a document of a Montana public body.[1] The plaintiff here is a citizen of Montana who has alleged he was denied the right to inspect the documents of a public body. These facts are sufficient to establish standing under Article II, Section 9 of the Montana Constitution.

¶23 To be clear, this decision does not decide the ultimate disposition of Shockley's request. The constitutional right to know is limited by individual privacy considerations which may permit the County to withhold the documents. In addition, there may be issues with respect to the disclosure of documents that contain confidentiality provisions. Moreover, the question of whether standing extends beyond Montana citizens is not before us, and we do not here decide it. We decide only that, as a Montana citizen, Shockley has standing to bring his claim.

**CONCLUSION**

---

[1] While there is no statute expressly authorizing the courts to remedy violations of Article II, Section 9, we have consistently held that Article II, Section 9 is self-executing, and have accordingly allowed plaintiffs to bring suit to remedy alleged violations without invoking an implementing statute. *See Bozeman Daily Chronicle v. City of Bozeman Police Dep't*, 260 Mont. 218, 231, 859

¶24    We reverse and remand for further proceedings consistent with this opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE

---

P.2d 435, 443 (1993).