FILED

09/19/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0502

DA 15-0502

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 230

---

JON KRAKAUER,

      Petitioner and Appellee,

  v.

STATE OF MONTANA, by and through its
COMMISSIONER OF HIGHER EDUCATION, Clayton T. Christian,

      Respondent and Appellant.

---

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2014-117
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Vivian V. Hammill (argued), Jessica M. Brubaker, Special Assistant
Attorneys General, Helena, Montana

      For Appellee:

            Peter Michael Meloy (argued), Meloy Law Firm, Helena, Montana

      For Amici Student Press Law Center, et al.:

            David K. W. Wilson, Jr., Morrison, Sherwood, Wilson & Deola, PLLP,
Helena, Montana

      For Amicus United States:

            Phillip H. Rosenfelt, Deborah Friendly, Rahul Reddy, U.S. Department of
Education, Washington, DC

            Joyce R. Branda, Alisa B. Klein, Tara S. Morrissey, U.S. Department of
Justice, Washington, DC

            Michael Cotter, Victoria Francis, U.S. Attorney's Office, Billings,
Montana

Argued: April 27, 2016
Submitted: May 18, 2016
Decided: September 19, 2016

Filed:

_____
                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Commissioner of Higher Education, Clayton Christian (Commissioner), challenges the summary judgment order entered by the First Judicial District Court, Lewis and Clark County, in favor of Petitioner Jon Krakauer (Krakauer), which ordered the release/inspection of certain student disciplinary records. We affirm in part, reverse in part, and remand for further proceedings. The Commissioner raises several issues, which we restate as follows:

> *1. Does Krakauer, a Colorado resident, have standing to avail himself of the right to know granted under Article II, Section 9 of the Montana Constitution?*

> *2. Is the release of records responsive to Krakauer's request prohibited by the Family Educational Rights and Privacy Act of 1974 (FERPA), as amended, and/or by § 20-25-515, MCA?*

> *3. How does Article II, Section 9 of the Montana Constitution apply to the request for release of the subject student records?*

> *4. Did the District Court abuse its discretion when it awarded attorney fees and costs to Krakauer?*

Because we remand for further proceedings, we do not address the merits of the attorney fee issue. We vacate the fee award so that the matter may be reconsidered upon conclusion of the proceeding.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This is a dispute over release of student records related to allegations of sexual assault occurring near the Missoula campus of the University of Montana (University). The underlying allegations of the case were part of a broader campus cultural concern that garnered local and national media attention. Krakauer, a journalist and resident of

3

Colorado, conducted an investigation and published a book chronicling instances of alleged sexual misconduct on or near the University campus. This case involves one of those instances. When Krakauer's request for release of certain student records related to the matter was denied by the Commissioner, Krakauer initiated this action by filing a petition in the First Judicial District Court.

¶3 In support of his petition, Krakauer submitted documents that the United States District Court for the District of Montana had previously unsealed and released. *Doe v. Univ. of Mont.*, No. CV 12-77-M-DLC, 2012 U.S. Dist. LEXIS 88519 (D. Mont. June 26, 2012), *available at* https://perma.cc/3RRE-ETXB.[1] There, a student (Doe) initiated the action under seal, seeking a preliminary injunction halting the University's disciplinary proceedings against him. The documents, now part of the record here, indicate that after a female student made an allegation that Doe had raped her in an off-campus apartment, the University initiated an investigation into a possible violation of the Student Conduct Code. Dean of Students Charles Couture determined that Doe committed sexual intercourse without consent, and as sanctions, recommended Doe's immediate expulsion from the University and restriction from all University property and University-sponsored events. Doe, represented by counsel, appealed the Dean's determination to the University Court, a body made up of faculty, staff, and students appointed to hear disciplinary matters.

---

[1] The United States District Court ordered that the documents, including the letters and findings of the Dean, the University Court, and University President Royce Engstrom, would have students' names, personal information, and pertinent dates redacted.

4

¶4 The University Court conducted a hearing and concluded by a 5-2 vote that Doe had committed sexual intercourse without consent, and further concluded by a unanimous vote of 7-0 that he should be sanctioned by expulsion from the University. Pursuant to the Student Conduct Code, Doe requested that the University Court's determination be reviewed by President Engstrom. President Engstrom's review considered whether the evidence provided a reasonable basis for the findings and disciplinary sanction, and whether procedural errors were so substantial as to deny a fair hearing to either party. President Engstrom upheld the University Court's findings and proposed sanction, and found no procedural error that denied a fair hearing.

¶5 As the final step in the disciplinary appeal process, Doe appealed President Engstrom's decision to the Commissioner, whose office acknowledged receipt of the appeal. This is the last step in the process documented in the records released by the U.S. District Court in *Doe*. Nothing more is documented there or in the record here about the Commissioner's subsequent actions in the case.

¶6 Krakauer filed a request with the Commissioner's office on January 17, 2014, naming a particular student and asking for "the opportunity to inspect or obtain copies of public records that concern the actions of the Office of the Commissioner of Higher Education in July and August 2012 regarding the ruling by the University Court of the University of Montana in which student . . . was found guilty of rape and was ordered expelled from the University." Krakauer asserted factual connections between the federal *Doe* case and a highly-publicized state criminal proceeding that had been initiated against the then-starting quarterback of the University's football team. He maintained that the

5

student Doe and the quarterback were the same person, and his request to the Commissioner named the student specifically. Krakauer postulated that the Commissioner must have overturned the University Court's and President Engstrom's decision and sanction of expulsion, noting that the student had "remained in school and continued to participate as the Grizzly quarterback."

¶7 The Commissioner refused to acknowledge that such records existed, and further refused to permit inspection or release of any such documents, asserting that federal and state law prevent him from doing so. Krakauer initiated this action on February 12, 2014, citing the right to know under the Montana Constitution. Upon cross-motions for summary judgment, and after holding a hearing, the District Court granted summary judgment to Krakauer, and ordered the Commissioner to "make available for inspection and/or copying within 21 days" the requested records, with students' names, birthdates, social security numbers, and other identifying information redacted.

¶8 The Commissioner appealed and we initially dismissed the case without prejudice, as the District Court had not yet entered an order addressing the attorney fee issue. The District Court awarded fees to Krakauer on June 19, 2015, and the Commissioner again undertook an appeal.

**STANDARDS OF REVIEW**

¶9 "We conduct de novo review of summary-judgment orders, performing the same analysis as does a district court pursuant to Rule 56 of the Montana Rules of Civil Procedure." *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186 (citing *LaTray v. City of Havre*, 2000 MT 119, ¶ 14, 299 Mont. 449, 999 P.2d 1010).

6

¶10 Substantively, Krakauer's Petition was based upon the constitutional right to know, and the Commissioner likewise raises constitutional issues. "Our review of questions involving constitutional law is plenary. A district court's resolution of an issue involving a question of constitutional law is a conclusion of law which we review to determine whether the conclusion is correct." *Bryan v. Yellowstone Cnty. Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 16, 312 Mont. 257, 60 P.3d 381 (internal citation omitted) (citing *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 28, 303 Mont. 274, 16 P.3d 1002).

## DISCUSSION

¶11 *1. Does Krakauer, a Colorado resident, have standing to avail himself of the right to know granted under Article II, Section 9 of the Montana Constitution?*

¶12 The Commissioner argues that Krakauer, as a resident of Colorado, does not have standing to pursue his Petition, because he is not a party intended to benefit from the Montana Constitutional right to know provision, and related statutes. The Commissioner argues this privilege was created and enacted for the sole benefit of Montana citizens, to allow them access to the workings of their own government.

¶13 In *Schoof v. Nesbit*, 2014 MT 6, 373 Mont. 226, 316 P.3d 831, we clarified the standing requirements, and more specifically the required showing for injury, under Article II, Section 9 of the Montana Constitution. After doing so for purposes of that case, we noted, "It is not appropriate in this case to address the parameters of standing for right to know and right of participation claims that may arise in other contexts." *Schoof*, ¶ 25. Later the same year, we addressed another standing argument related to Article II,

Section 9 of the Montana Constitution, in *Shockley v. Cascade Cnty.*, 2014 MT 281, 376 Mont. 493, 336 P.3d 375. There, we held that the Montana Constitution does not prohibit a citizen of one Montana county from requesting public documents from a public body in another county. *Shockley*, ¶ 22. We declined to address "the question of whether standing extends beyond Montana citizens[.]" *Shockley*, ¶ 23. That question arises here.

¶14 Article II, Section 9 of the Montana Constitution is short and clear. "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." The Commissioner asks this Court to consider that, while the actual constitutional language uses the word "person," the enabling statutes use the word "citizen" in describing the persons having the right to inspect public documents. *Compare* § 2-6-102, MCA (2013) ("Every citizen has a right to inspect and take a copy of any public writings of this state . . . .") (repealed 2015), *and* 2015 Mont. Laws 1484, 1486 (effective date Oct. 1, 2015) ("Except as provided in subsections (2) and (3), every person has a right to examine and obtain a copy of any public information of this state."). The Commissioner also cites to the use of the word "citizen" in transcripts of debates about the issue during the Montana Constitutional Convention.

¶15 As we have previously stated, Article II, Section 9 of the Montana Constitution is "unambiguous and capable of interpretation from the language of the provision alone." *Great Falls Tribune Co. v. Day*, 1998 MT 133, ¶ 30, 289 Mont. 155, 959 P.2d 508 (citing *Great Falls Tribune v. District Court of Eighth Judicial Dist.*, 186 Mont. 433, 437, 608

8

P.2d 116, 119 (1980)). We have also stated that the provision is "unique, clear and unequivocal," and that "[w]e are precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation."[2] *Associated Press v. Bd. of Pub. Educ.*, 246 Mont. 386, 391, 804 P.2d 376, 379 (1991). We thus rely on the language of the provision itself, which expressly provides that "no person" shall be deprived of the right to examine documents or observe the deliberations of public bodies, except when required by the demands of individual privacy.

¶16    "Since the alleged injury is premised on the violation of constitutional and statutory rights, standing depends on 'whether the constitutional or statutory provision . . . can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *Schoof*, ¶ 21 (citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206 (1975)). Therefore, under the plain language of the provision, we hold that Krakauer, though an out-of-state resident, has standing to invoke the right to know guarantees under Article II, Section 9 of the Montana Constitution.[3]

---

[2] The Commissioner correctly points out that we noted the language of the Constitutional Convention in *Shockley*, ¶ 20. However, we cited to the Verbatim Transcript in order to illustrate the general goal of Article II, Section 9 of the Montana Constitution—namely, government transparency and accountability. While the quotes we cited were illustrative of the general purpose of the provision, resorting to these extrinsic sources was unnecessary for interpretation. Because the constitutional convention delegates ultimately used the word "person" when describing the right to know, and in light of the amended wording of the open record statutory scheme (referenced above), which now also uses the term "person," we are not persuaded by the Commissioner's argument.

[3] The standing of an out-of-state resident has not previously been presented to the Court as a contested legal issue, but, as a practical matter, out-of-state corporate residents have often availed themselves of the rights under Article II, Section 9 of the Montana Constitution. *See, e.g.*, *Associated Press, Inc., a New York not-for-profit corporation registered to do business in Montana v. Mont. Dep't of Revenue*, 2000 MT 160, 300 Mont. 233, 4 P.3d 5.

¶17    2.  *Is the release of records responsive to Krakauer's request prohibited by the Family Educational Rights and Privacy Act of 1974 (FERPA), as amended, and/or by § 20-25-515, MCA?*

¶18    The Commissioner contends that because Krakauer's records request referenced a student by name, FERPA prohibits his office from releasing any records responsive to Krakauer's request.  The Commissioner argues that § 20-25-515, MCA, likewise prohibits him from releasing the requested records.  Krakauer responds that FERPA is essentially spending clause legislation that does not actually prohibit the University or the Commissioner from releasing records, that one of the explicit exceptions to FERPA's general prohibition on the release of student records applies in this context, and that § 20-25-515, MCA, actually permits the release of the requested records.

### a.  General Applicability of FERPA

¶19    Krakauer argues that FERPA "simply does not prohibit anything"; it merely conditions federal funding on confidentiality compliance.  He cites to *Bd. of Trs. v. Cut Bank Pioneer Press*, 2007 MT 115, ¶ 24, 337 Mont. 229, 160 P.3d 482, where we stated that FERPA has been described as "spending legislation."  Krakauer contends that the Commissioner's fear of losing federal funding is "wholly speculative," and points out that, in its amicus brief, the United States has conspicuously  refrained from "any claim or assertion that . . . the [Montana University System] will suffer any penalty" if it releases the requested documents.  Krakauer asserts that "FERPA's spending legislation merely sets conditions on the receipt of federal funds and cannot forbid or prohibit any state action."

¶20 Congress enacted FERPA to "protect the privacy of students and their parents." *Pioneer Press*, ¶ 24; *see also* 34 C.F.R. § 99.2 ("The purpose of this part is to set out requirements for the protection of privacy of parents and students . . . ."). FERPA prohibits educational institutions and agencies from having a policy or practice of releasing education records or personally identifiable information contained in education records, and conditions receipt of federal monies on those institutions' compliance with its directives. *See* 20 U.S.C. § 1232g. The University, as a recipient of federal funds, agreed in its Program Participation Agreement to comply with "The Family Educational Rights and Privacy Act of 1974 and the implementing regulations . . . [,]" and thereby assumed the risk the Secretary of Education would withhold future funds in the event of substantial non-compliance. *See* 20 U.S.C. § 1234c(a)(1).

¶21 Krakauer is seeking records related to a specific student's disciplinary proceedings, and the Commissioner argues that Krakauer's particular request fell squarely under FERPA's prohibitions. The Commissioner offers that another kind of request would have been handled differently by his office: "If Krakauer had wanted an understanding of how the Commissioner's office handles appeals related to student conduct code complaints . . . , he could have requested all decisions resolving complaints for some appropriate specified period of time, and he would have received the Commissioner's decisions for a variety of cases with the names, dates and any other personally identifiable information redacted."

¶22 Title 20, Section 1232g(a)(4)(A) of U.S. Code provides: "For the purposes of this section, the term 'education records' means, . . . , those records, files, documents, and

11

other materials which—(i) contain information *directly related to a student*; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." (Emphasis added.) In *Pioneer Press*, ¶ 27, we noted that several jurisdictions had interpreted the term "education records" to exclude disciplinary records. However, since that decision, as the Commissioner and amicus United States point out, not only have FERPA regulations been broadened, but courts have recognized that disciplinary records constitute "education records" under FERPA. *See State ex rel. ESPN, Inc. v. Ohio State Univ.*, 970 N.E.2d 939, 946-47 (Ohio 2012) ("we agree with the Sixth Circuit and hold that the [student disciplinary] records here generally constitute 'education records' subject to FERPA . . . . The records here—insofar as they contain information identifying student-athletes—are directly related to the students").[4] FERPA regulations also now confirm that disciplinary records fall within the purview of the Act, authorizing limited, non-consensual release of student disciplinary records in certain circumstances. *See, e.g.*, 34 C.F.R. § 99.31(a)(13) & (14). Based upon the understanding that the term "education records" encompasses disciplinary records, the Commissioner correctly asserted that the records at issue here fall under the application of FERPA.

¶23     It is also apparent to us that the Commissioner, as Chief Executive Officer of the Montana University System (MUS), was properly cognizant of the heavy strings that FERPA attached to the MUS' federal funding. Although FERPA has been characterized

---

[4] We distinguished such holdings in *Pioneer Press* on the ground that releasing records with all personally identifiable information redacted would not violate FERPA. *Pioneer Press*, ¶ 31. However, Krakauer's request listed a specific student by name, thus requiring the Commissioner's office to necessarily release personally identifying information regarding the student. *See* 34 C.F.R. § 99.3 (*see* "Personally Identifiable Information" at (g)).

as "spending legislation," we find Krakauer's argument that it "prohibits nothing" delusive. FERPA is more than mere words in the wind. As outlined above, the University, a unit of the MUS, promised to abide by FERPA's directives in exchange for federal funding. By signing the Program Participation Agreement, the University acknowledged the potential consequence of loss of federal funding in the event that it violated FERPA. *See United States v. Miami Univ.*, 294 F.3d 797, 808 (6th Cir. 2002) ("Even in the absence of statutory authority, the United States has the inherent power to sue to enforce conditions imposed on the recipients of federal grants. 'Legislation enacted pursuant to the spending power [, like the FERPA,] is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S. Ct. 1531 (1981)). Whether or not FERPA explicitly prohibits state action, the financial risk it imposes upon MUS for violation of the statute is a real one. As the Commissioner stated, "The MUS should not be put in the position of predicting what decisions might be made by the federal government."

### b. Applicability of FERPA to the Subject Documents

¶24 FERPA prohibits institutions from having a "'policy or practice of permitting the release of education records (or personally identifiable information contained therein . . .) of students without the written consent of the students or their parents.'" *Miami Univ.*, 294 F.3d at 806 (internal brackets omitted) (citing 20 U.S.C. § 1232g(b)(1)). The regulation defines "Personally Identifiable Information" to include information such as a student's name, family names, date of birth, or "other information that, alone or in

13

combination, is linked or linkable to a specific student that would allow a reasonable person . . . to identify the student with reasonable certainty[.]" 34 C.F.R. § 99.3 (*see* "Personally Identifiable Information" at (a)–(f)). Since our decision in *Pioneer Press*, this definition has been expanded to include "[i]nformation requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." 34 C.F.R. § 99.3 (*see* "Personally Identifiable Information" at (g)). The records in question facially fall within the restrictions of FERPA, and the Commissioner rightly considered FERPA's requirements in determining whether to release them. As noted by amicus United States, "[W]here a request targets education records relating to a particular student, identified by name, FERPA's protections unquestionably apply." Under these provisions, had the Commissioner released the documents that Krakauer originally requested, using the specific student's name, he would have violated the statute. FERPA and its accompanying regulatory scheme, including its expanded definition of "Personally Identifiable Information," prohibited the unilateral release of the requested documents by the Commissioner, as Krakauer clearly knew the identity of the student that he named specifically in his request.

### c. Exceptions Permitting Release Under FERPA

¶25    While FERPA generally prohibits the release of student educational records and personally identifiable information in those records, the records do not necessarily recede into the recesses of Chateau d'If, never to see the light of day. FERPA contains several

14

non-consensual exceptions that permit an institution to release educational records. *See, e.g.*, 20 U.S.C. § 1232g(b)(1)(c); 20 U.S.C. § 1232g(b)(3).

¶26 Krakauer argues that the requested records must be made available under the exception that provides for release of the final results of a disciplinary proceeding "if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense." 20 U.S.C. § 1232g(b)(6)(B).[5] He argues that the exception "explicitly authorizes disclosure of records related to the Commissioner's decision since it is, undisputedly, the 'final result' of the [MUS]'s disciplinary proceeding against [the named student]." The information permitted to be released under this exception is limited, as "final results" include "only the name of the student, the violation committed, and any sanction imposed by the institution on that student[,]" and other information, including "the name of any other student, such as a victim or witness," can only be released upon the written consent of those other persons. 20 U.S.C. § 1232g(b)(6)(C)(i)-(ii). As noted by the Commissioner, this narrow exception permits release of limited information about "a violation" of certain University rules, and the sanction imposed. Thus, if no violation was found to have occurred, this exception, by its own terms, would not apply. The record before us here does not indicate whether the Commissioner ultimately held that a violation occurred, and thus, we are unable to now determine whether this exception authorized release of limited information related to Krakauer's request. However, upon remand and after conducting an *in camera* review of the records, the District Court may

---

[5] The District Court did not rule on the applicability of this exception.

15

consider the applicability of this exception along with the other considerations set forth below.

¶27 Additionally, FERPA authorizes release of personally identifiable information in education records when "such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified[6] of all such orders or subpoenas . . . ." 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i). This exception broadly permits release of personally identifiable information pursuant to a "judicial order, or pursuant to any lawfully issued subpoena," neither restricting the orders to those issued by particular, such as federal, courts nor limiting the legal basis or grounds for release of the records. 20 U.S.C. § 1232g(b)(2)(B). FERPA thus generally authorizes the release of records upon orders from courts acting properly within their jurisdiction. Krakauer's petition sought an order pursuant to this exception.

### d. Section 20-25-515, MCA

¶28 Notably, Montana law operates similarly to FERPA. Chapter 357, Laws of Montana (1973), was entitled "An Act Requiring Montana Colleges and Universities to Develop Procedures to Protect a Student's Right to Privacy Concerning . . . His College or University Records," and stated it was "the legislature's intent that an institution of the

---

[6] The federal statute and corresponding regulation both require that such notice would be given to the student or parent in advance of the issuance of any subpoena or court order that might release such documents. Even if, as in this case, the subject student is not a party to the lawsuit, an opportunity is provided for the student (or parents) to be heard before such records are released. "The educational agency or institution may disclose information . . . only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action . . . ." 34 C.F.R. § 99.31(a)(9)(ii).

university system of Montana is obligated to respect a student's right to privacy" in the student's records. 1973 Mont. Laws 706. As codified from that 1973 Act, § 20-25-515, MCA, states:

> A university or college shall release a student's academic record only when requested by the student or by a subpoena issued by a court or tribunal of competent jurisdiction. A student's written permission must be obtained before the university or college may release any other kind of record unless such record shall have been subpoenaed by a court or tribunal of competent jurisdiction.[7]

State law thus also prohibits disclosure of student records, but, similar to FERPA, permits release when "subpoenaed by a court or tribunal of competent jurisdiction." Section 20-25-515, MCA.

¶29 Krakauer argues that § 20-25-515, MCA, "does not condition a university's disclosure of student records on a court order. It merely requires a subpoena, which in Montana can be effectuated at any time by an issuing party's counsel of record." The Commissioner replies that, under Krakauer's interpretation, the statute would have no meaning because "a party would only need to file a lawsuit and request the records through subpoena," and, in any event, the District Court did not issue a subpoena here.

¶30 The District Court ordered the records be made available for inspection in its Memorandum and Order, not by a subpoena. Answering the Commissioner's argument, a reading of the statute as enacted in 1973 makes it clear that the Legislature intended student records would be subject to release following legal process conducted "by a court or tribunal of competent jurisdiction," and did not intend to restrict that legal process

---

[7] Section 20-25-516(1), MCA, also requires that academic records "be kept separate from disciplinary and all other records."

17

exclusively to the issuance of a "subpoena," the purpose of which is to compel a person's attendance in a court or proceeding. *See* § 26-2-102, MCA. The statute is satisfied by the issuance of a court order upon completion of that legal process. Answering Krakauer's argument, merely filing a lawsuit and requesting a records subpoena without a court's consideration of a student's privacy interests would fail to satisfy the statute's requirements that student privacy be protected and that release of records be prohibited until a court or tribunal conducts that legal process. In Montana, the law regarding a student's privacy is governed by the Montana Constitution, by which a student's right to privacy in his or her records is balanced against the public's right to know and obtain the records. That process must be completed before requested records can be released pursuant to the applicable judicial exceptions in FERPA and § 20-25-515, MCA.

¶31     *3. How does Article II, Section 9 of the Montana Constitution apply to the request for release of the subject student records?*

¶32     The Commissioner challenges the District Court's determination that the student records at issue should be released, arguing that the court "incorrectly shifted the balance between the right to privacy and the right to know in favor of Krakauer and his book deal and against the well-established privacy rights of the student named in his request[.]" In response, Krakauer argues that the public's right to know outweighs the privacy expectation in the records here because the specific student at issue has a diminished expectation of privacy, which the District Court correctly determined.

¶33     The District Court emphasized the public exposure of the events in question, noting that "the entire incident, from the initial administrative investigation to the

18

conclusion of the criminal trial, is a matter of public record. The only aspect of the lengthy process that is not a matter of public record is the action taken by the Commissioner." Citing approvingly of the U.S. District Court's reasoning in *Doe* that "while there may be good reasons to keep secret the names of students involved in a University disciplinary proceeding, the Court can conceive of no compelling justification to keep secret the manner in which the University deals with those students," the District Court determined that the subject student "does not have a reasonable expectation of privacy regarding the redacted records of the Commissioner," and therefore ruled that the merits of public disclosure outweighed "the individual privacy rights of the student in this case." The court did not conduct an *in camera* review of the records, but broadly ordered the Commissioner "to make available for inspection and/or copying" to Krakauer the records responsive to his request, subject to redaction of student identification information, presumably to be accomplished by the Commissioner.

¶34 Our concerns over the principles applied by the District Court in the constitutional balancing process, as well as the unique considerations under the federal and state law applicable to student records, compel us to reverse the District Court's order and to remand this matter with instructions to the District Court to conduct an *in camera* review of the requested records, and to re-apply the constitutional balancing test to those records in accordance with the following analysis of the interests here at issue.

¶35 Article II, Section 9 of the Montana Constitution provides that "[n]o person shall be deprived of the right to examine documents . . . of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual

privacy clearly exceeds the merits of public disclosure." As we have explained, "[t]his constitutional provision generally requires information regarding state government to be disclosed to the public, except in cases where the demand of individual privacy clearly exceeds the merits of public disclosure." *Associated Press, Inc.*, ¶ 24. Indeed, "our constitution gives a high priority to the public's right to know." *Lence v. Hagadone Inv. Co.*, 258 Mont. 433, 447, 853 P.2d 1230, 1239 (1993), *overruled on separate grounds by Sacco v. High Country Indep. Press*, 271 Mont. 209, 896 P.2d 411 (1995). Krakauer asserts an interest in the process that the Commissioner employed in reviewing the student's appeal and points out: "It cannot be denied that the entire rape culture at the University, and universities in general, has become one of increasing public import and concern[,]" and "The University's compliance with its Title IX obligations is also one of public import and interest." We acknowledge that Krakauer's interest in the MUS' policies in responding to and handling complaints of alleged sexual assault are important matters of concern to the public.

¶36 However, as the District Court correctly noted, "[T]he right to know is not absolute. It requires a balancing of the competing constitutional interests **in the context of the facts of each case**, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure." *Associated Press, Inc.*, ¶ 24 (bold in original) (citations and internal quotation marks omitted). Pursuant to the Montana Constitution, we have established a two-part test in order to strike a balance between the needs for government transparency and individual privacy: (1) "whether the person involved had a subjective or actual expectation of privacy[,]" and (2) "whether society is willing to

20

recognize that expectation as reasonable." *Great Falls Tribune Co. v. Day*, 1998 MT 133, ¶ 20, 289 Mont. 155, 959 P.2d 508 (citation omitted).

¶37 In the context of this particular case, as discussed above, the national and state legislatures have taken the affirmative action of enacting legislation establishing the privacy interests of students in their records, as a matter of law. This action sets this case apart from others involving general privacy interests, and courts must honor the unique privacy protection legislatively cloaked around the subject records by factoring that enhanced privacy interest into the balancing test.[8] We have implicitly recognized this interest in the past, *Pioneer Press*, ¶ 36, and since then, as noted above, stricter FERPA regulations have been adopted. We cite, merely for illustrative purposes because it does not contemplate Montana law, the phrasing of the increased burden that must be shown by a petitioner in order to access protected student records, provided by the United States District Court for the Middle District of Pennsylvania:

> When a third-party seeks disclosure of education records covered by FERPA, the trial judge, in exercise of discretion, must conduct a balancing test in which the privacy interests of the students are weighed against the genuine need of the party requesting the information. *While FERPA does not create a privilege, it does represent the strong public policy of*

---

[8] We have previously recognized enhanced or reduced privacy interests as part of the determination of whether society would recognize the privacy interest as reasonable, depending on the circumstances. *See Great Falls Tribune Co. v. Cascade Cnty. Sheriff*, 238 Mont. 103, 107, 775 P.2d 1267, 1269 (1989) ("[L]aw enforcement officers occupy positions of great public trust. Whatever privacy interest the officers have in the release of their names as having been disciplined, it is not one which society recognizes as a strong right."); *Billings Gazette v. City of Billings*, 2013 MT 334, ¶ 49, 372 Mont. 409, 313 P.3d 129 ("Where the status of the employee necessitates a high level of public trust, such as an elected official or high level employee, the expectation of privacy in misconduct may be found to be significantly lower than for an administrative employee. Similarly, an employee may have a lower expectation of privacy in misconduct related to a duty of public trust, such as responsibility for spending public money or educating children.").

> *protecting the privacy of student records.* Courts balance the potential
> harm to the privacy interests of students with the importance and relevance
> of the sought information to resolving the claims before the court.

*Moeck v. Pleasant Valley Sch. Dist.*, No. 3:13-CV-1305, 2014 U.S. Dist. LEXIS 142431, at *6-7 (M.D. Pa. Oct. 7, 2014) (internal citations omitted) (emphasis added). This enhanced privacy interest must be considered and factored into the constitutional balancing test on remand.

¶38 The District Court should not have concluded, without noting the unique facts here, that the student at issue "does not have a reasonable expectation of privacy regarding the redacted records of the Commissioner," in reliance on *Doe*. The U.S. District Court in *Doe* was not presented, as here, with a records request explicitly identifying a particular student. Rather, the *Doe* case involved an unnamed litigant. While redaction may have served to protect the privacy interest of the unnamed litigant in *Doe*, and may well provide a privacy safety net in many situations, redaction of records provided in response to a request about a particular student may well be completely futile. As amicus United States points out, "when an educational institution is asked to disclose education records about a particular person, then no amount of redaction in [the] records themselves will protect the person's identity, because the requestor knows exactly whom the records are about." Obviously, records provided in response to a request naming a particular student will be about that student, whether redacted or not, and thus, there is more of machination than of cooperation in Krakauer's offer, repeated at oral argument, to accept redacted records in response to his request. Consequently, on remand, the District Court must consider whether the futility of redaction affects the

22

privacy analysis and the ultimate determination about what records can be released, if any.

¶39 We have recognized the efficacy of an *in camera* review of requested records by a district court to ensure that privacy interests are protected. *Billings Gazette*, ¶ 42; *Jefferson Cnty. v. Mont. Standard*, 2003 MT 304, ¶ 19, 318 Mont. 173, 79 P.3d 805 ("it is proper for a district court to conduct such an *in camera* inspection in order to balance the privacy rights of all of the individuals involved in the case against the public's right to know."). As these cases note, *in camera* review is particularly appropriate when the interests of third parties are involved. As the Commissioner stated at oral argument, the requested records could also include information pertaining to student members of the University Court, the victim, and other University students who acted as witnesses in the multiple-step process, and counsel hinted that the records are extensive. On remand, the District Court should review the requested documents *in camera*, and in the event it determines to release any document after conducting the balancing test, every precaution should be taken to protect the personal information about other persons contained in the documents.

¶40 We have stated that, when conducting the balancing test, a district court must consider all of the relevant facts of each case. *See Associated Press, Inc.*, ¶ 24 ("It requires a balancing of the competing constitutional interests in the context of the facts of each case, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure."). Both parties argue at great length about various factors at issue here, such as the publicity that has followed this case, the source of the original

request, the reasons behind the request, the named student's status as an athlete at a publicly-funded university, and the prior litigation, all of which may be considered and weighted by the District Court when conducting the balancing test. We decline to address these issues individually in favor of the District Court's application of the balancing test on remand.

¶41 Finally, the Commissioner argues that an order by the District Court requiring release of documents pursuant to Krakauer's request would "create binding precedent" establishing a "policy or practice" of the MUS to release personally identifiable information, in violation of FERPA. However, we disagree. As noted in *Miami University*, "Once the conditions and the funds are accepted, the school is indeed prohibited from *systematically* releasing education records without consent." 294 F.3d at 809 (emphasis added). A court order for release entered in one case does not require MUS to commence systematically releasing student records. Each case turns on its individual facts and circumstances, assessed and weighed through the balancing test. While court decisions do set precedent, MUS will nonetheless still evaluate each request on the basis of its individual facts, assessing the request in light of the precedent that has been created by litigation. This review is not a systematic policy or practice of releasing student records in violation of FERPA, which provides an exception for the release of such information "in compliance with judicial order, or pursuant to any lawfully issued subpoena[.]" 20 U.S.C. § 1232g(b)(2)(B). If the MUS believes a request cannot be fulfilled without violating FERPA and state protections, that decision can be reviewed by the courts following the filing of a petition by either MUS or the requestor.

**CONCLUSION**

¶42  Having concluded that the records in question in this case appear to fall under the "Personally Identifiable Information" protection granted by FERPA, and also having concluded that FERPA and state statute provide an exception for release of information pursuant to a lawfully issued court order, we remand this case to the District Court for an *in camera* review of the documents in question. After giving due consideration to the unique interests at issue in this case, as discussed herein, the District Court will re-conduct the constitutional balancing test and determine what, if any, documents may be released and what redactions may be appropriate. As noted above, the exception to FERPA that allows for release of documents pursuant to a court order requires advance notice to the affected student or parents, and a district court must comply with this directive before releasing protected information. *See Opinion*, ¶ 27 n. 6. Because we remand this case for further proceedings, the award of attorney fees is vacated.

¶43  Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

/S/ JOHN C. BROWN
District Court Judge John C. Brown
sitting for Justice Patricia Cotter

Justice Laurie McKinnon, dissenting.

¶44 Preliminarily, I disagree with the Court's resolution of two smaller issues: our decision to remand for an in camera review to determine if an exception to nondisclosure applies pursuant to 20 U.S.C. § 1232g(b)(6)(B) and our failure to rule on the Commissioner's request regarding attorney fees.

¶45 With respect to these issues, I agree with the Court that had the Commissioner released documents pursuant to Krakauer's request for a specific student's records, the Commissioner would have violated FERPA and its accompanying regulatory scheme. Opinion, ¶ 24. I depart from the Court, however, in our decision to remand for a determination of whether 20 U.S.C. § 1232g(b)(6)(B) applies, which is part of FERPA and the regulatory scheme. Pursuant to this provision of FERPA, a university may disclose to the public the final results of disciplinary proceedings against an alleged perpetrator of a crime of violence or nonforcible sex offense, but only if the university determines that the student violated the university's rules or policies with respect to the offense. The Commissioner has stated on several occasions that this provision is inapplicable. As the Court states, "if no violation was found to have occurred, this exception, by its own terms, would not apply." Opinion, ¶ 26. I therefore would not remand for the District Court to consider the applicability of this exception when counsel for the Commissioner has represented, following acknowledgment of the specific exception, the inapplicability of the subsection. Indeed, it is apparent that the reason Krakauer is interested in obtaining all of the student's records is that the Commissioner found no violation. Further, as the Court properly notes, this narrow exception would

26

only permit release of limited information related to the name of the student, the violation committed, and any sanction imposed by the institution. Opinion, ¶ 26. The record already establishes that no sanctions were imposed; the Commissioner has represented, through counsel, that the specific exception is inapplicable; and Krakauer's request identifies the student by name. It is therefore pointless to remand for an in camera review to determine whether the exception applies.

¶46 Montana law also prohibits the Commissioner from releasing the student's academic records in response to Krakauer's request. Section 20-25-515, MCA, prohibits the release of a student's records absent consent of the student or "subpoena [issued] by a court or tribunal of competent jurisdiction." At the time the Commissioner denied Krakauer's request, the student had not consented to the release of his records and a subpoena or court order had not issued. Therefore, the Commissioner correctly refused to disclose the student's academic records in response to Krakauer's request. The Court nonetheless fails to find that the Commissioner's actions in following both federal and state law within the context of a discretionary award of attorney fees pursuant to § 2-3-221, MCA, does not warrant a conclusion that Krakauer be responsible for his own fees and costs. Given the conclusion reached by the Court—that the Commissioner was required to follow FERPA and § 20-25-515, MCA—I would hold that the Commissioner is not responsible for Krakauer's fees and costs since Krakauer has pursued an exception to FERPA and Montana law. Given the context of FERPA, the federal regulatory scheme, and Montana law, it would be unreasonable to conclude that the Commissioner should be held responsible for Krakauer's fees and costs.

27

¶47    A larger concern, however, is the Court's decision to remand these proceedings for an in camera review by the District Court and our abbreviated analysis of the balancing test to be employed.[1]   In the context of this particular case, we have left unanswered many of the questions raised by the parties which, in my opinion, were incorrectly resolved as a matter of law by the District Court.  Our guidance to the District Court is essentially that, "[t]his enhanced privacy interest must be considered and factored into the constitutional balancing test on remand."  Opinion, ¶ 37.  In an attempt to describe "this enhanced privacy interest," we cite "phrasing" from another jurisdiction, "merely for illustrative purposes," but are unwilling to a set forth a standard, rule, or appropriate analysis regarding a statutorily protected enhanced privacy interest.  In my opinion, we have failed to address the parties' arguments.  If correct legal principles and analyses are applied by this Court while considering the specificity of Krakauer's request, it is not necessary to remand these proceedings to the District Court for an in camera review and balancing of privacy interests and the right to know.

¶48    When considering the disclosure of confidential information, the constitutional right to know granted by Article II, Section 9 of the Montana Constitution, must be balanced with the constitutional right of privacy granted by Article II, Section 10 of the Montana Constitution.  We have stated that when balancing these competing interests, a court must perform a two-part test:  (1) whether the individual has a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as

---

[1]  Krakauer arguably foreclosed his opportunity for an  in camera review of the records when he represented to the District Court and this Court that an in camera review was not necessary.

reasonable. *Bozeman Daily Chronicle v. City of Bozeman Police Dep't.*, 260 Mont 218, 225, 859 P.2d 435, 439 (1993). We have on many occasions determined that society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual's ability to perform public duties. *See Great Falls Tribune v. Cascade Cnty. Sheriff*, 238 Mont. 103, 107, 775 P.2d 1267, 1269 (1989) (the public's right to know outweighed the privacy interests of three disciplined police officers in the public release of their names because police officers hold positions of "great public trust"); *Bozeman Daily Chronicle*, 260 Mont. at 227, 859 P.2d at 440–41 (investigative documents associated with allegations of sexual intercourse without consent by an off-duty police officer were proper matters for public scrutiny because "such alleged misconduct went directly to the police officer's breach of his position of public trust . . ."); *Svaldi v. Anaconda-Deer Lodge Cnty.*, 2005 MT 17, ¶ 31, 325 Mont. 365, 106 P.3d 548, (a public school teacher entrusted with the care and instruction of children held a position of public trust and therefore the public had a right to view records from an investigation into the teacher's abuse of students); and *Billings Gazette v. City of Billings*, 2013 MT 334, ¶ 49, 372 Mont. 409, 313 P.3d 129 ("an employee may have a lower expectation of privacy in misconduct related to a duty of public trust, such as responsibility for spending public money or educating children.").

¶49    These cases, referred to by the Court in the Opinion, ¶ 37, n.8, are examples of a *reduced* expectation of privacy—reduced because the privacy interest is unreasonable and therefore not one that society is willing to recognize. They are examples of how a reduced expectation of privacy is balanced against the right of the public to know how its

29

public monies are spent or its public institutions are managed. Undisputedly public employees have no statutory protection for their privacy rights when the information relates to the ability of the individual to perform his public duties. *Bozeman Daily Chronicle*, 260 Mont. at 226–27, 859 P.2d at 440–41. Here, in contrast, we are applying an enhanced privacy interest, with significant protections afforded that interest by the Montana Legislature in Title 20, Chapter 25. In addition to § 20-25-515, MCA, prohibiting the release of student records unless there is consent or a lawfully issued subpoena, universities are prohibited from requiring students to waive privacy rights, § 20-25-512, MCA; students must be given written notice before university officials may enter their rooms, § 20-25-513, MCA; and academic transcripts may only contain information of an academic nature, § 20-25-516, MCA. The existence of these student privacy protections and the absence of any applicable exception establish both the actual expectation of privacy and the reasonableness of that expectation. Accordingly, when the privacy rights of the student may not be protected by redacting "personally identifiable information" the student's right of privacy in school records outweighs the public's right to know because that privacy interest has been statutorily determined to be reasonable. Once we have found an actual expectation of privacy that is reasonable, we must protect that privacy interest. *See Bozeman Daily Chronicle*, 260 Mont. at 228, 859 P.2d at 441. ("In this case . . . the victim of the alleged sexual assault and the witnesses involved in the investigation have a subjective or actual expectation of privacy which society is willing to recognize as reasonable. Accordingly, the privacy rights of the alleged victim and of the witnesses outweigh the public's right to know and must be accorded adequate

30

protection in the release of any of the investigative documents at issue.") Thus, whenever we cannot adequately protect a recognized reasonable expectation of privacy, the records may not be disclosed. The Court has presented no authority to the contrary.

¶50 Montana law does not distinguish between types of students. The protected interest a student has in his education records is not diminished if the information is already public or if there has been publicity about an event involving the student. Information in a student disciplinary proceeding is broader than that presented in a criminal proceeding, where a defendant receives numerous constitutional and statutory protections. Student education records exist primarily to assist the university in the education of its students. The fact that information revealed through the evolution of a criminal proceeding may also be duplicated within the broader student disciplinary file is irrelevant to whether the student maintains his privacy rights in his education records. The occurrence of a criminal proceeding, which must be public, does not serve to strip a student's privacy interests from his confidential education files. The purposes and objectives underlying these separate proceedings are distinct and we should articulate as much for the trial courts. The laws protecting a student's education records are neither limited nor lessened because a student has been charged with a criminal offense or is being scrutinized by the media. This remains true even though that student may be a star quarterback for a Montana university, a redshirt freshman from a small, rural Montana town, or any other student in whom the public may have a particular interest.

¶51 In agreeing with the Court that a student's education records enjoy "the unique privacy protection [that is] legislatively cloaked around the subject records," Opinion,

31

¶ 37, I do not contend that a student's privacy right is absolute. Many proceedings in other jurisdictions have balanced FERPA, state statutory provisions protecting the confidentiality of student records, and countervailing interests in disclosure *See Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 293–94 (E.D.N.Y. 2008) (ordering the production of relevant education records in a discrimination case); *Catrone v. Miles*, 160 P.3d 1204, 1210–12 (Ariz. Ct. App. 2007) (holding that education records could be ordered to be produced in a medical malpractice case and noting "the protections afforded to educational records by statute do not prohibit, but rather permit, disclosure pursuant to court order"); *Gaumond v. Trinity Repertory Co.*, 909 A.2d 512, 518 (R.I. 2006) (holding that FERPA does not bar the production of relevant education records pursuant to court order in a personal injury case). In many of these instances, the records were relevant to litigation that did not involve the records themselves. *See Gaumond*, 909 A.2d at 518 (distinguishing prior cases where public disclosure was sought by newspapers and was not granted).

¶52   In the context of Krakauer's request for the specific student's records, the student's enhanced privacy interest would receive no protection. As the Court observes, "[o]bviously, records provided in response to a request naming a particular student will be about that student . . . ." Opinion, ¶ 38. Here, Krakauer requested a specific student's records by name, because he wanted the specific student's records. Had he been interested in the process by which the Commissioner handled complaints of sexual assault, his request would not have been specific as to the student. Krakauer's request of the Commissioner was to "inspect or obtain copies of public records that concern the

actions of the Office of the Commissioner of Higher Education in July and August 2012, regarding the ruling by the University Court of the University of Montana in which student [name redacted] was found guilty of rape and expelled from the University." With the exception of 20 U.S.C. § 1232g(b)(6)(B), which the Commissioner indicated was inapplicable, state and federal privacy laws clearly prohibited the Commissioner from disclosing the records based upon the specificity of the request. Significant to the resolution of these proceedings, Krakauer did *not* make his request in a manner which would allow the student's "unique" privacy right—cloaked with legislative protection, Opinion, ¶ 37—to receive any semblance of protection through, for example, redaction of personally identifiable information. If Krakauer had wanted an understanding of how the Commissioner's office handles appeals related to the student conduct code and, in particular, sexual assaults, he could have requested all decisions resolving complaints for an appropriate specified period of time. Such an interest is substantial and appropriately protected by our constitutional and statutory provisions concerning the public's right to know. It is undisputed that the Commissioner would have responded to such a request by supplying the student education records with personally identifiable information redacted in a manner which would have also protected the student's substantial privacy interest in his education records. Thus, given the manner in which Krakauer has made his request, any "balancing" of interests that could include protection of the student's enhanced privacy interest is unobtainable. It is clear that what Krakauer sought were particular student records for the publication of his book. Although this Court has precedent for the disclosure of confidential records of a particular person, those cases exist in the context

of a reduced expectation of privacy of public employees. The student here is not a public employee, but a student—and Montana law does not distinguish between types of students and their expectation of privacy. Their records are uniformly private. Disclosure here violates not just the federal protections provided by FERPA, but also our own law in Montana.

¶53 I would reverse the judgment of the District Court. I would conclusively decide the issue of attorney fees and costs in favor of the Commissioner. Remand for in camera review is not necessary given the manner in which the request for records was made and that, as a result, no protection can be accorded the student's substantial and weighty privacy interests. I would affirm on issue one.

/S/ LAURIE McKINNON